IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:23-CV-00353-M

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| RICHARD T. SHARPE, and | ) | |
| SHERRY J. PEELE, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the Plaintiff's Motion for Partial Summary Judgment. DE 25. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr. issued a Memorandum and Recommendation ("M&R"), recommending that the court deny the Plaintiff's motion. DE 47. The Plaintiff filed a timely objection to the M&R.[1] DE 49. The court finds that it has subject matter jurisdiction over this action. For the reasons that follow, the court respectfully rejects the M&R in part, and grants in part and denies in part the Plaintiff's motion. Plaintiff's claims against Defendants and its theory of joint and several liability will proceed to trial.

## I. Procedural History

In this action for recovery of disability benefits under the Railroad Retirement Act, allegedly overpaid to Defendant Richard T. Sharpe ("Sharpe"), the United States alleges common law claims for fraud, conversion, payment under mistake of fact, and unjust enrichment, and claims for violations of the False Claims Act. DE 1 at ¶¶ 55-101. On June 27, 2023, Plaintiff filed a

---

[1] Despite the opportunity to do so, Defendants did not file a response to the objection.

complaint against Defendants, alleging that they had engaged in a "fraudulent course of conduct and scheme to defraud the United States by falsely claiming and collecting disability benefits." DE 1 at 1. Defendants filed an answer on September 27, 2023, raising three affirmative defenses and, otherwise, denying the factual bases for Plaintiff's claims.

Plaintiff filed the instant motion on December 9, 2024, requesting that the court grant summary judgment on its payment by mistake and unjust enrichment claims, the Defendants' statute of limitation defense, and its theory that Defendant Sherry J. Peele ("Peele") should be held jointly and severally liable. DE 26 at 17, 21, 22. On January 15, 2025, Defendants responded to the motion arguing that (1) the statute of limitations for the claims has lapsed, or that genuine issues of material fact exist as to whether the statute of limitations has lapsed (DE 34 at 10); (2) the doctrine of voluntary payment precludes the claims (DE 34 at 6); and (3) genuine issues of material fact exist as to the underlying support for the claims (DE 34 at 8-9). Defendants also contend that joint and several liability should not attach to Peele. DE 34 at 9.

The court referred the motion to Judge Jones on October 28, 2025; he held a hearing on February 11, 2026, and issued the present M&R on February 20, 2026. Judge Jones finds that the voluntary payment doctrine does not apply, but genuine issues of material fact exist with respect to Plaintiff's claims and Defendant's statute of limitations defense. DE 47. Plaintiff filed a timely objection in which it contends that Judge Jones (1) improperly permitted Defendants to create factual issues by identifying discrepancies in their own factual accounts; (2) failed to recognize that Sharpe's undisputed failure to report to the Railroad Retirement Board ("RRB") rendered him ineligible to receive benefits; and (3) improperly accepted Defendants' "facts" concerning a 2015 telephone call with an RRB agent to find that a genuine issue of material fact exists for the statute of limitations defense. *See* DE 49. Notably, the M&R does not mention Plaintiff's joint and

2

several liability theory, and Plaintiff makes no objection to such omission. *See id.*; *see also* DE 49.

Upon review of the record, this court questioned whether it lacked the authority to adjudicate Plaintiff's claims in favor of review by the Fourth Circuit Court of Appeals, as required by statute (*see* 45 U.S.C. § 231g, incorporating 45 U.S.C. § 355(f)), and that disregard of the statutory requirement for specific findings by the Board under circumstances presented here may lead to questions concerning due process protections or even the constitutionality of the applicable statutes themselves. The court directed the parties to file supplemental briefs concerning the following:

1. Whether Plaintiff's claims are properly before this court given the applicable statute's provision that an annuitant's eligibility for payment of occupational disability benefits shall cease upon the annuitant's failure to report certain changes in circumstances, "except for good cause shown to the Board" (45 U.S.C. § 231a(a)(3)), particularly here, where no administrative review nor hearing occurred. *See* 45 U.S.C. § 231f ("any person aggrieved by a decision on his application for an annuity or other benefit shall have the right to appeal to the Board").

2. Whether Plaintiff's claims are properly before this court given that no final determination has been made by the Railroad Retirement Board concerning the allegations against Defendants, including whether, "in the judgment of the Board," recovery of any erroneous payment "would be against equity or good conscience." *See* 45 U.S.C. § 231i.

3. Whether it is proper under the Administrative Procedures Act to forego the procedures required by applicable regulations for determining the eligibility of a claimant to receive, or continue receiving, occupational disability benefits. *See* 20 C.F.R. §§ 220.10 – 220.21.

Order, DE 50. The parties each filed a timely brief (DE 51, 52), and the court is now fully apprised.

## II. Subject Matter Jurisdiction

Before proceeding to determine whether summary judgment is proper, the court must assure itself of its jurisdiction to adjudicate the claims in this case. *See MDC Innovations, LLC v. Hall*, 726 F. App'x 168, 172 (4th Cir. 2018) (citing *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737,

740 (1976)) ("[A] court is required to satisfy itself of its subject matter jurisdiction even if the parties do not raise the issue."). Here, Plaintiff alleges the court's subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1345. Compl. ¶ 3, DE 1. Section 1331 grants federal courts original jurisdiction over cases involving federal questions "arising under the Constitution, laws, or treaties of the United States." *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 197 (4th Cir. 2022) (citing 28 U.S.C. § 1331). Here, Plaintiff alleges claims under the False Claims Act, which, of course, involve questions arising under federal law and, if Plaintiff were not the United States, this court's jurisdiction to hear Plaintiff's state law claims might arise under 28 U.S.C. § 1367 (granting pendent or "supplemental" jurisdiction over state law claims related to the federal claims). *See Poppleton Now Cmty. Ass'n, Inc. v. La Cite Dev., LLC*, -- F.4th --, 2026 WL 1204639, at *6 (4th Cir. May 4, 2026). However, as the Plaintiff in this case, the United States has invoked, and may properly invoke, the court's jurisdiction under Section 1345,[2] which states:

> Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

28 U.S.C. § 1345. Thus, "federal courts have jurisdiction over any case brought by the United States as a plaintiff unless Congress has 'otherwise provided' for jurisdiction elsewhere." *United States v. J & E Salvage Co.*, 55 F.3d 985, 987 (4th Cir. 1995).

Plaintiff argues that the Railroad Retirement Act of 1974, 45 U.S.C. §§ 231-231v ("RRA"), at issue here, neither abrogates nor repeals Section 1345 and, thus, the court has jurisdiction to hear its claims in this case. Defendants counter that the RRA and its regulations require that all

---

[2] Indeed, the Fourth Circuit has ruled that, where federal jurisdiction is based on Section 1345, other statutes are unnecessary to provide a jurisdictional basis. *See U.S. ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 510 (4th Cir. 1999).

4

benefits disputes be heard and resolved in the first instance by the RRB in accordance with applicable procedures. The court concludes that the RRA does not abrogate Section 1345, which provides this court jurisdiction to hear Plaintiff's claims against Defendants.

Federal courts, including the Fourth Circuit, have long recognized the United States' right to bring common law civil actions to collect monies owed to the federal government. *See United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660, 667 (4th Cir. 1996) ("The right exercised by the federal government . . . to bring suit at common law [is] a long-standing one."). For example, in *United States v. Texas*, 507 U.S. 529 (1993), the defendants argued that the Debt Collection Act of 1982 abrogated the government's right to pursue collection efforts under the common law, but the Supreme Court rejected this position and found that the United States could properly bring common law actions to recover prejudgment interest on debts owed by the states. *Id.* at 539.

Citing *Texas*, the Fourth Circuit concluded in *Moffitt, supra*, that the Comprehensive Forfeiture Act (CFA) did not preempt the government's ability to bring a state law conversion action against a law firm, whose fees were allegedly subject to forfeiture because they were funded primarily by drug trafficking proceeds. *Moffitt*, 83 F.3d at 666-67. The Fourth Circuit instructs, "We start from the premise that federal statutes do not, by implication, abrogate the government's right to bring common law suits." *Id.* at 667. Under the authority granted by Section 1345, the United States "can bring common law actions 'claiming in its contractual and proprietary relations the same protection of the general law, at least, that belong[s] to any other legal person.'" *Id.* (citation omitted). Accordingly, "common law actions are available to the government to supplement those remedies found in federal statutes, *as long as the statute does not expressly abrogate those rights*." *Id.* (emphasis added).

5

No party argues that the RRA specifically expresses Congress' intent to abrogate Section 1345, and the court finds that it does not. Instead, Defendants argue the RRA "requires" that the RRB not only hear disputes like that alleged here, but also abide by procedures for recovery of erroneous disability payments in accordance with the Act and its regulations (DE 52 at 2-3); however, Defendants provide no statutory or case citations supporting this position. The RRA itself does not require that the RRB hear disputes concerning alleged overpayments and the recovery thereof. *See* 45 U.S.C. § 231f(b) (describing the RRB's "powers and duties"). Rather, the statute provides only that recovery of any payments found to be erroneous by the RRB *may* be made by adjustment in subsequent payments. 45 U.S.C. § 231i(a). The statute also grants the RRB authority to decline recovery when, in its judgment, the payee is "without fault" or when it "would be contrary to the purpose" of the RRA or "against equity or good conscience." 45 U.S.C. § 231i(c).[3] Finally, the "jurisdiction" provision requires that the RRB's decisions "shall be subject to judicial review in the same manner . . . as though the decision were a determination . . . under the Railroad Unemployment Insurance Act." 45 U.S.C. § 231g. In other words, the RRA requires judicial review of the RRB's decisions in a court of appeals. *Denberg v. U.S. R.R. Retirement Bd.*, 696 F.2d 1193 (7th Cir. 1983), *cert. denied*, 466 U.S. 926 (1983) (citing 45 U.S.C. § 231g).

None of these provisions abrogates or "repeals" Section 1345. In *United States v. Lahey Clinic Hospital, Inc.*, the First Circuit found that Section 1345 "can only be limited, as the initial proviso provides, by (1) an explicit repeal of the statute by an Act of Congress or (2) an implicit

---

[3] This court initially expressed a concern about the provision implicated by this action, 45 U.S.C. § 231a(a)(3), which requires that a disability payee provide "satisfactory proof" of his or her disability "from time to time as prescribed by the Board." The provision also describes the consequences of failing to abide by the requirement (i.e., payments "shall cease"); however, the record in this case indicates that Plaintiff seeks recovery for overpayments only through May 2018, before any payments "ceased" under this provision (if at all) and, thus, this portion of the provision appears to be irrelevant.

6

repeal by total irreconcilability of the two acts." 399 F.3d 1, 9 (1st Cir. 2005) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 808 (1976)). For an implicit repeal of § 1345, a party must show that (1) the provisions of § 1345 are in irreconcilable conflict with the later statute, or (2) the later statute, by clear and manifest intent, covers the whole subject matter area and was meant as a substitute. *Id.* at 10. "The intention of Congress to repeal must be clear and manifest," and "[r]epeal of a federal statute by implication is disfavored." *Id.* The party arguing for repeal has the burden to show that the statute has been repealed. *Id.*

Defendants make no argument concerning Section 1345 or its repeal and, in any event, the court finds nothing in the RRA that explicitly repeals Section 1345. Defendants' argument that, under the RRA, jurisdiction arises in federal court only upon review of an RRB decision is not persuasive. *See* DE 52 at 4. "The United States is not asking the federal courts to review a decision of the [RRB]; it is bringing an independent action to establish the United States' right to obtain restitution of monies wrongfully paid from the public fisc." *Lahey*, 399 F.3d at 12. Nothing in the RRA or its attendant regulations establishes that the RRA is the exclusive means by which the government may seek recovery of overpayments of disability benefits.[4]

Regarding whether the RRA implicitly repeals Section 1345, the court finds none of the listed provisions imply any such limitation. Again, Defendants mention nothing about whether an irreconcilable conflict arises between the RRA and Section 1345. The RRA's provision for judicial review of the RRB's decisions does not preclude the United States' ability to recover erroneous benefits payments under a different grant of jurisdiction. "The mere fact that some acts are made

---

[4] To the extent that Defendants argue any regulation supporting the RRA mandates that the United States follow the administrative process, Section 1345 "cannot be repealed by administrative regulation from an executive branch agency." *Lahey*, 399 F.3d at 13; *see also id.* ("§ 1345 by its terms states, 'except as otherwise provided by Act of Congress'; it does not state 'except as provided by administrative regulation of an agency.'").

reviewable should not suffice to support an implication of exclusion as to others." *Id.* at 14 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm. of Md.*, 535 U.S. 635, 644 (2002)). For the RRA, Congress has provided an avenue for judicial review of the Board's decisions; however, that "does not support an implication that other avenues of judicial review are precluded." *Id.*

In sum, the court has satisfied itself that it has jurisdiction under Section 1345 to hear the United States' claims against Defendants in this case.

### III. Findings of Fact

Except as noted below, neither party objects to Judge Jones' "Statement of Undisputed Facts" (DE 47 at 2-3), and the court finds no clear error. Accordingly, the court adopts the statement and recites the facts as follows.

This case arises out of Defendant Richard Sharpe's ("Sharpe") claims for and receipt of disability benefits payments under the RRA. DE 27 ¶¶ 68-69; Pl. Ex. 15, DE 29-5. Sharpe worked as a railroad conductor from 1976 (DE 27 ¶ 1) until February 2015 (*id.* ¶ 52). While working as a conductor, and thereafter, Sharpe took part in multiple business ventures. *Id.* ¶ 2. Sharpe owns a Christmas tree farm and sales lot; a wreath business, Carolina Wreath and Farm, Inc. ("Carolina Wreath"); and rental properties. *Id.* ¶¶ 2-4, 9, 43. Sharpe uses a single bank account for all of the income and expenses related to his businesses and rental properties. *Id.* ¶ 50. Although the focus of Sharpe's tree business is Christmas trees and wreaths, Carolina Wreath operates year-round. *Id.* ¶ 23. Sharpe sources trees from tree farms around North Carolina, including his own located in Yancey County and Nash County. *Id.* ¶¶ 18, 19. Throughout the year, Sharpe plants, trims, and fertilizes his trees. *Id.* ¶ 24. Sharpe's 2016 tax return indicates that he drove 25,000 miles while working on behalf of Carolina Wreath. DE 29-1 at 5.

In February 2015, just shy of forty years of employment with the railroad, Sharpe suffered a head injury. DE 27 ¶ 52. As a result of this injury, Sharpe developed difficulty reading. Resp. UMF ¶ 1, DE 35. In September 2015, Sharpe, with the assistance of his fiancé, Defendant Sherry Peele ("Peele"), applied for disability benefits through the RRB.[5] Application for Determination of Employee's Disability, DE 1-2; DE 27 ¶¶ 54-58. Unfamiliar with the process, Peele relied on an RRB representative, Hester Gammage ("Gammage"), to help her complete the disability application. DE 35 ¶ 15. Over the phone, Gammage asked Peele questions and began filling out the disability application form AA-d1 (DE 1-2) based on answers Peele provided. DE 35 ¶ 15(e); DE 36-2 at 6.[6] Gammage mailed the partially completed AA-d1 form to Peele and Sharpe to complete, sign, and mail back. DE 35 ¶ 15(g). Sharpe signed the form, but he does not recall doing so because of his injury at the time. DE 27 ¶ 64; DE 35 ¶ 64. The section Sharpe signed certifies that the signer (Sharpe) will immediately notify the RRB if his condition improves or if he works, whether for himself or for another. DE 27 ¶ 62. The RRB reviewed and granted Sharpe's application, determining he was qualified to receive a disability annuity benefits. *Id.* ¶ 69.

_____

[5] The RRB administers comprehensive retirement, disability, survivor, unemployment, and sickness benefit programs for the nation's railroad workers and their eligible family members pursuant to the RRA, and the Railroad Unemployment Insurance Act, 45 U.S.C. §§ 351-359. The RRB generally takes the place of the Social Security Administration for railroad workers and their families. DE 1 at 3.

[6] The parties dispute details regarding the substance of the phone call. Defendants assert that Gammage asked whether Sharpe had a business, and Peele responded by telling Gammage about Carolina Wreath, the tree lot, and the rental property. DE 35 ¶ 5(h). Peele explained to Gammage that Carolina Wreath and the tree lot did not make money. *Id.* Although the rental property was generating income, after describing the operation to Gammage as a migrant camp where farmers pay to house their workers, Gammage informed Peele that it was rental income and therefore it was not considered and did not count. *Id.* Plaintiff asserts Peele gave conflicting information regarding this phone call, as her sworn interrogatory responses indicate Gammage excluded Sharpe's tree and wreath businesses from the form because they were essentially hobbies. DE 37 at 15.

9

Sharpe's condition had improved by mid-2017, and his doctor permitted him to continue the work he had been doing for Carolina Wreath, but Sharpe was not released to return to work as a railroad conductor. DE 27 ¶ 77. Sharpe never notified the RRB of any improvement in his condition. *Id.*[7]

The RRB Office of the Inspector General started investigating Sharpe in October 2019, following a review of RRB disability annuitants and businesses incorporated in North Carolina. DE 27 ¶ 92; DE 35 ¶¶ 16, 20. The RRB sent Sharpe a continuing disability report form in the fall 2019, which Defendants completed and submitted on December 10, 2019. DE 1-4; DE 27 ¶ 87. On the form, Peele, on behalf of Sharpe, certified that Sharpe was not employed, self-employed, or an owner or co-owner of a business from August 1, 2015 to the present (December 10, 2019). DE 27 ¶¶ 88-91; DE 1-4 at 1, 5, 14.

## IV.    Legal Standards

A magistrate judge's recommendation carries no presumptive weight. The court "may accept, reject, or modify, in whole or in part, the . . . recommendation[ ] . . . receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1); *accord Mathews v. Weber*, 423 U.S. 261, 271 (1976). The court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Stokes v. Berryhill*, 294 F. Supp. 3d 460, 462 (E.D.N.C.

---

[7] The record indicates that letters from the RRB reminding Sharpe of his obligation to report any changes (including improved condition, commenced or increased work, or increased earnings) were addressed to him at his P.O. Box in Sharpsburg, NC on November 17, 2016, November 8, 2017, December 20, 2018, and November 12, 2019 (*see* DE 28-6); however, Peele testified that she does not recall receiving the letters (DE 28-2 at 53: 20 - 54: 10) and the RRB OIG agent could not confirm that these reminders were actually sent or received (DE 36-3 at 35: 2-20).

2018) (quoting *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982)). Absent a specific and timely objection, the court reviews only for "clear error" and need not give any explanation for adopting the recommendation. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

Neither party objects to the legal standards by which Judge Jones analyzed the Plaintiff's motion. The court agrees that the proper analysis is under Rule 56 of the Federal Rules of Civil Procedure. If "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" the court shall grant summary judgment. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party, and "[a] fact is material if it might affect the outcome" of the litigation. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotations and citations omitted). The court's role at the summary-judgment stage is not "to weigh the evidence and determine the truth of the matter" but, rather, "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Accordingly, the court must "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

When the nonmovant bears the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this initial burden, the burden then shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). In so

11

doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see Celotex*, 477 U.S. at 324. "Significantly, a party must be able to present the materials it cites in 'a form that would be admissible in evidence,' and supporting affidavits and declarations 'must be made on personal knowledge' and 'set out facts that would be admissible in evidence.'" *Doe v. Morgan State Univ.*, 544 F. Supp. 3d 563, 573 (D. Md. 2021) (quoting Fed. R. Civ. P. 56(c)(2) & (c)(4)).

While "it is the province of the jury to resolve conflicting inferences from circumstantial evidence[,] [p]ermissible inferences must still be within the range of reasonable probability." *Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir.), *cert. denied*, 358 U.S. 908 (1958). It is "the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Id.* Accordingly, when the evidence, taken in the light most favorable to the nonmovant, reveals two equally plausible alternatives, a choice of one over the other would require a reasonable jury to speculate; in such instance, summary judgment is proper.

## V. Analysis

Plaintiff contends that, by his failure to report, Sharpe became ineligible to receive RRA occupational disability benefits. The RRA, administered by the RRB, provides that current railroad employees, who have completed twenty years of service or are at least sixty years of age, are eligible for disability benefits if their "permanent physical or mental condition is such as to be

disabling for work in their regular [railroad] occupation." 45 U.S.C. § 231a(a)(l)(iv).[8] The Act provides that "[s]uch satisfactory proof shall be made from time to time as prescribed by the Board, of the disability . . . and of the continuance of such disability." 45 U.S.C. § 231a(a)(3). "If the individual fails to comply with the requirements prescribed by the Board as to proof of the continuance of the disability . . ., his right to [the disability annuity] shall . . . cease[.]" 45 U.S.C. § 231a(a)(3).

The RRB has promulgated regulations concerning reporting requirements. A disability annuity recipient who "is disabled for work in his or her regular occupation" must "promptly tell" the RRB if his impairment improves, if he returns to any type of work, if he increases the amount of work he performs, or if his earnings increase. 20 C.F.R. § 220.16. In addition, recipients are required to file an earnings report for any month in which their earnings exceed a stated limit. 20 C.F.R. § 220.162. "This reporting duty is critical because the RRB 'conducts continuing disability reviews to determine whether or not the annuitant continues to meet the disability requirements of the law.'" *United States v. Hill*, 119 F.4th 862, 867 (11th Cir. 2024) (quoting 20 C.F.R. § 220.186(a)).

As noted above, Judge Jones concludes that the voluntary payment doctrine does not apply, but genuine issues of material fact exist with respect to Plaintiff's claims and Defendants' statute of limitations defense. DE 47. Plaintiff objects to the M&R in two respects: (1) the facts on which Judge Jones relies to find a genuine triable issue concerning the statute of limitations defense are irrelevant; and (2) the material factual issues on which Judge Jones relies for Plaintiff's payment

---

[8] No party objects to Judge Jones' finding that this subsection applies to Sharpe's eligibility for benefits and the court finds no error.

13

by mistake and unjust enrichment claims were improperly created by Defendants. *See* DE 49. In addition, the Plaintiff contends that Defendants should be held jointly and severally liable.

A. Statute of Limitations Defense

The parties agree that the United States' unjust enrichment and payment by mistake claims are quasi-contract claims governed by the six-year statute of limitations set forth in 28 U.S.C. § 2415(a).[9] In this case, Plaintiff filed the Complaint on June 27, 2023; thus, under § 2415(a), any claims for damages arising before June 27, 2017, would be time barred. However, 28 U.S.C. § 2416 provides that the period during which "the facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances" shall be excluded "for the purpose of computing the limitations periods established in section 2415."

Plaintiff contends that it did not know, and reasonably could not have known, until late 2019 that Sharpe's condition had improved and he may not have been eligible to receive disability benefits. Defendants counter that Plaintiff became aware of material facts as early as September 2015, during the telephone call between Peele and Gammage, the RRB representative. DE 34 at 10. According to Defendants, the details of the phone call included Peele's description of the "wreath/tree lot business" and the "rental property" owned by Sharpe. *Id.* Judge Jones found that the details of the 2015 phone call raise genuine issues of material fact. DE 47 at 14. In its objection, Plaintiff argues that any information Peele may have provided Gammage in September 2015 is immaterial to the statute of limitations question, because the information was disclosed

_____

[9] As noted by Judge Jones, a question may exist as to whether § 2415(a) is applicable. *See* DE 47 at 13 n.5 (citing *King v. R.R. Ret. Bd.*, 981 F.2d 365, 367 (8th Cir. 1992)). However, although *King* has not been cited in the Fourth Circuit, the parties agree to application of § 2415(a). Accordingly, for purposes of this analysis, the court will assume that the United States' claims are subject to the six-year statute of limitations in § 2415(a).

14

*before* Sharpe submitted his application and was ultimately approved to receive benefits. DE 49 at 12.

The court finds the undisputed facts and applicable law align with Plaintiff's position. Nothing in the statutory language of the RRA suggests that simple ownership of a business, prior to the receipt of disability payments and without evidence of the claimant's income or work in that business, violates the disability annuity policy of the RRA. The RRB approved Sharpe's benefits application after considering both the information provided over the telephone and that later received in writing from Sharpe and Peele. What is material for the unjust enrichment and payment by mistake claims is *when* the United States became aware of its allegations that Sharpe's condition had improved, that he was working, or that he was earning above the statutory limit *after* he began receiving disability benefits.

Defendants have further argued that publicly available information about their companies sufficiently put the United States on notice of the facts material to the rights of action more than six years prior to the filing of this suit. DE 34 at 11. Specifically, Defendants note that Carolina Wreath was "incorporated in 2003," that its Articles of Incorporation identify Sharpe as the "sole director of the company," and that the annual reports filed following its incorporation identify Sharpe as president and Peele as Secretary of the corporation. *Id.* Defendants also point to the Carolina Wreath and Sharpe Tree Farm websites, and the latter's Facebook page, as evidence that the United States "had information available to it to bring its claims well before December 2019." *Id.*

Even assuming that the publicly available information identified by Defendants would be sufficient to satisfy the § 2416 standard (i.e., "material to the right of action"), information in a public database typically does not suffice to put a party on notice that the limitations period has

15

commenced. *Cf. United States v. DeFelice*, No. CIV-14-415-RAW, 2015 WL 7018018, at *3 (E.D. Okla. Nov. 10, 2015) (finding that information in the National Missing Persons Data System was "too attenuated" to satisfy a "should have been known" standard to prevent tolling of statute of limitations). Furthermore, the Carolina Wreath Articles of Incorporation and its annual reports identifying Sharpe as president of the company do not describe Sharpe's involvement in the business, any improved condition, or any earnings above the statutory limit, much less Sharpe's involvement in the tree farm business or the rental property. Finally, Defendants do not offer a factual description of the Facebook page.

Defendants do not raise genuine issues of material fact as to whether the Plaintiff's claims are time barred. Viewed in the light most favorable to Defendants, the facts alleged by Defendants to have put the United States on notice of the basis of its claims earlier than late 2019 are not legally sufficient to have done so. Conversely, Plaintiff has demonstrated by undisputed facts that it did not know, and should not have known, about the possibility of erroneous payments to Sharpe until the RRB commenced its investigation in October 2019. The court respectfully rejects this portion of the recommendation and grants Plaintiff's motion for summary judgment on Defendants' statute of limitations defense.

B. Plaintiff's Claims

As to its payment by mistake claim, Plaintiff alleges that the RRB paid disability annuity benefits to Sharpe from January 1, 2016 through May 28, 2018, under the mistaken belief that "Sharpe's condition had not improved, that he was not working, and that he was not earning substantial income from his work." DE 26 at 18. In response, Defendants argue that the doctrine of "voluntary payment" bars Plaintiff's claim. DE 34 at 6. Specifically, Defendants argue that Gammage, an RRB employee, was acting as an agent of the RRB when she assisted Peele and

16

Sharpe with Sharpe's disability claim. *Id.* at 7. Defendants allege that any information Gammage, as an agent, collected during the call could be "imputed to the RRB," and as such, the RRB was aware of Sharpe's businesses and paid his disability anyway. *Id.* Defendants also point to several alleged factual issues with respect to the elements of Plaintiff's payment under mistake of fact claim. *See* DE 34 at 7-8.

Judge Jones found that Defendants' assertion of the voluntary payment doctrine, which is an affirmative defense, is untimely and prejudicial to Plaintiff. DE 47 at 10-11.[10] No party objects to this conclusion and the court finds no clear error. Accordingly, this court will not consider whether the doctrine applies to preclude summary judgment.

Turning to the law governing Plaintiff's payment by mistake claim, the United States may recover funds which its agents have "wrongfully, erroneously, or illegally paid" without a statute to authorize the United States to do so. *United States v. Wurts*, 303 US 414, 415 (1938). Accordingly, district courts in the Fourth Circuit have recognized that the United States may recover overpayments by federal programs through a common law theory of payment by mistake. *See, e.g., United States v. CB&I Areva Mox Services, LLC*, No. 1:19-CV-444-TLW, 2020 WL 13920697, at *1 (D.S.C. Dec. 15, 2020); *United States v. Brooks*, No. 1:22-CV-0101, 2022 WL 1812254, at *1 (E.D. Va., June 1, 2022); *United States v. Fadul*, No. CIV.A. DKC 11-0385, 2013

---

[10] Defendants' failure to raise the voluntary payment defense in their Answer, or amend their Answer to include it, results in waiver of the affirmative defense. Rule 8(c) of the Federal Rules of Civil Procedure requires a party to "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). "Under the accepted interpretation of Rule 8(c) . . . any matter constituting an avoidance or affirmative defense to the matters raised in plaintiff's complaint must be pleaded in a timely manner or it is deemed to be waived." *Pinnix v. SSC Silver Stream Operating Co. LLC*, No. 7:14-CV-161-FL, 2017 WL 4278608, at *1 (E.D.N.C. Sept. 26, 2017) (quoting *Westfarm Assoc. Ltd. P'ship v. Washington Suburban Sanitary Comm'n*, 66 F.3d 669, 689 (4th Cir. 1995)). Defendants' answer, which makes no mention of the voluntary payment affirmative defense, was filed in September 2023, and they sought no amendments of the pleading before the deadline.

17

WL 781614, at *1 (D. Md. Feb. 28, 2013). A claim for payment by mistake of fact "allows the government to recover funds which its agents have wrongfully, erroneously, or illegally paid." *Fadul*, 2013 WL 781614 at *12 (quoting *United States v. Medica–Rents Co.*, 285 F. Supp. 2d 742, 776 (N.D. Tex. 2003)). For such a claim, "the government is entitled to reimbursement for payments . . . where it is shown: (1) payments were made (2) under the belief that they were properly owed; (3) that belief being erroneously formed; and (4) the mistaken belief was material to the decision to pay." *United States v. Adams*, 371 F. Supp. 3d 1195, 1217 (N.D. Ga. 2019). The government "need not plead that the defendants knew the payments were mistaken." *Id.* at 1218.

Notably, Judge Jones asserts that "[i]n North Carolina, there is not a stand-alone cause of action for payment by mistake, but those who make a payment by mistake are permitted to bring an action to recover under the theory of unjust enrichment." DE 47 at 11 (citations omitted). He proceeded to determine whether summary judgment was proper by analyzing both claims under the standards applicable to an unjust enrichment claim in North Carolina. *Id.* at 12-13. In its objection, the United States mentions nothing about this portion of the analysis, but in its motion for summary judgment, the government noted that it "does not believe there is a meaningful difference between federal common law and North Carolina law with respect to the claims and cites to North Carolina law for ease of reference." DE 26 at 18 n.1. Having no objection to the legal standards by which Judge Jones evaluated Plaintiff's claims, and finding no clear error, the court adopts the same standards here.

"Under North Carolina law, to recover on an unjust enrichment claim, plaintiffs must prove (1) that they conferred a benefit on another party, (2) that the other party consciously accepted the benefit, and (3) that plaintiffs did not confer the benefit gratuitously or officiously (i.e., not conferred by an interference in the affairs of the other party in a manner

18

that is not justified in the circumstances)." *Nix v. Chemours Co. FC, LLC,* 456 F. Supp. 3d 748, 764 (E.D.N.C. 2019) (citations omitted). "[W]hen money is paid to another under the influence of a mistake of fact, and it would not have been paid had the person making the payment known that the fact was otherwise, the money may be recovered. The basis of such recovery is that money paid through misapprehension of facts belongs, in equity and good conscience, to the person who paid it." *United States v. Jurik,* 943 F. Supp. 2d 602, 612-13 (E.D.N.C. 2013) (quoting *Tarlton v. Keith,* 250 N.C. 298, 306, 108 S.E.2d 621, 626 (1959)).

No party disputes that Plaintiff conferred a benefit on Sharpe and that Sharpe consciously accepted the benefit. With respect to element three, however, Defendants argue that genuine issues of material fact exist as to whether Plaintiff conferred the payments gratuitously or officiously, specifically, whether because of "Sharpe and Peele's failure to notify the RRB of Sharpe's improved condition, work, and earnings," the RRB did not "know[ ] Sharpe was able to work and was earning in excess of the monthly allowable earnings limit." *See* DE 34 at 7. Judge Jones determined that Sharpe may have, in fact, received an overpayment of benefits by his failure to report his improved condition and increased work; however, Judge Jones concluded that genuine issues of material fact exist as to whether Sharpe's earnings increased to more than the monthly limit and were, thus, reportable. *See* DE 47 at 16 ("While it is undisputed that Sharpe did not report additional earnings to the RRB, the court cannot grant the Government's motion for summary judgment based on conflicting financial records that create a genuine issue of material fact.").

Plaintiff objects to Judge Jones' conclusion for two reasons: (1) the M&R identifies only one dispute of fact (i.e., the "conflicting factual accounts regarding Sharpe's net earnings in

19

documents that he signed, swore out, and/or certified"), and Defendants improperly created such dispute by identifying discrepancies in their own account of the facts; and (2) the M&R did not consider Sharpe's undisputed failure to notify the RRB of his improved condition and work on behalf of his property rental business and Carolina Wreath. DE 49 at 6-11. Again, Plaintiff contends that it paid Sharpe occupational disability benefits during the relevant period "under the mistaken belief that Sharpe's condition had not improved, he was not working, and he was not earning substantial income." DE 26 at 18.

The court finds that, under the prevailing law and regulations, the earnings issue examined by Judge Jones is relevant to only one question in this case, and genuine issues of material fact exist as to whether and, if so, when (1) Sharpe's occupational disability improved, (2) he returned to or (3) increased work, or (4) his earnings increased, any of which must be found to determine when (if at all) Sharpe's obligation to report arose. As noted above, the applicable reporting regulation provides:

> If the annuitant is entitled to a disability annuity because he or she is disabled for work in his or her regular occupation, the annuitant should promptly tell the Board if—
>
> (a) His or her impairment(s) improves;
>
> (b) He or she returns to any type of work;
>
> (c) He or she increases the amount of work; **_or_**
>
> (d) His or her earnings increase.

20 C.F.R. § 220.16 (emphasis added). The statute by which this regulation was promulgated requires that, "[i]f the individual fails to comply with the requirements prescribed by the Board as to proof of the continuance of the disability . . ., his right to any annuity by reason of such disability shall, except for good cause shown to the Board, cease[.]" 45 U.S.C. § 231a(a)(3).

Here, Judge Jones properly found no genuine issue of material fact as to whether Sharpe made a report to the RRB during the relevant period; Sharpe admittedly did not. *See* DE 47 at 15 ("Because Sharpe failed to make any such report, he may have received an overpayment of benefits."). Judge Jones also concluded that, because the attendant regulations (1) require the return of disability payments if the employee earns more than a certain amount per month, (2) permit the imposition of a penalty for failures to report, and (3) allow the Board to make "end-of-year adjustments," summary judgment is unwarranted because genuine issues of material fact exist regarding Sharpe's earnings. DE 47 at 15-16. The court agrees with Judge Jones' conclusion but, as explained below, only with respect to whether Sharpe increased his work and/or earnings and failed to report the increase(s) to the RRB.

Plaintiff objects to Judge Jones' conclusion, arguing that "[a] party against whom summary judgment is sought cannot create a jury issue by identifying discrepancies in his own account of the facts." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 191 n.7 (4th Cir. 2001). The Fourth Circuit has consistently held this proposition to be true. *See, e.g., Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946 (4th Cir. 1984). In those cases, the factual discrepancy came from affidavits attached to the nonmovant's response to the motion for summary judgment. The factual context here, however, is meaningfully different. The purported factual discrepancy noted by Plaintiff does not arise out of an affidavit filed by Defendants in response to the present motion but exists between two exhibits appended to Plaintiff's own Statement of Facts. *See generally* DE 29 at Exs. 11, 12, 13, 18, 19, 20. Such a discrepancy cannot be characterized as an improper effort on the part of the nonmovants to create an issue of fact. The court overrules Plaintiff's objection in this respect.

21

Plaintiff also objects that Judge Jones did not evaluate Plaintiff's arguments that Sharpe failed to notify the RRB of his improved impairment and/or return to work in his property rental business and Carolina Wreath. The court agrees and respectfully finds the evaluation incomplete. It is certainly possible that, if Sharpe's impairment had improved or Sharpe had returned to work but he did not increase the amount of his work or earnings, he may still be found to have violated 45 U.S.C. § 231a(a)(3) if he failed to report such events. The applicable regulation, 20 C.F.R. § 220.16, does not require an employee to report an improved impairment *and* a return to work *and* an increase in work or earnings. The statute's plain language states that an employee's right to a disability annuity "shall . . . cease" if the employee "fails to comply with the requirements prescribed by the Board as to *proof of the continuance of the disability*." 45 U.S.C. § 231a(a)(3) (emphasis added). Certainly, a reported improved impairment or return to work alone might affect the RRB's determination as to whether an employee remains "disabled" under the statute and retains the right to receive annuity payments. Thus, the court adopts the portion of the M&R concluding that genuine issues of material fact exist as to whether Sharpe failed to report an increase in work or earnings, but finds it is not the end of the evaluation.

Regarding improved impairment, the court considers definitions set forth in a publicly available document referenced by the Plaintiff and attached as Exhibit A to the Complaint. Form RB-1d is an Employee Disability Benefits booklet intended "for use with Form AA-1d," the standard application for disability annuity payments for railroad employees like Sharpe. *See* RB-1d, DE 1-1. Sharpe certified on his application that he received a copy of the booklet; however, Peele testified that she never received nor read the booklet. In any event, the booklet informs applicants about their rights and responsibilities and advises, in relevant part, that, "to receive an occupational disability annuity, you must . . . be 'permanently disabled' for work in your

22

'regulation railroad occupation.'" *Id.* at 6. "Permanently disabled" is defined as "a permanent medical condition that prevents you from working." *Id.* at 23. The booklet also advises that "[t]o be disabled for all work in your regular railroad occupation means that your condition prevents you from working in your regular job, *although you may be able to do other kinds of work.*" *Id.* at 24 (emphasis added).

The record reflects that Sharpe suffered his head injury in February 2015, then submitted an application for occupational disability benefits on September 15, 2015. On the Application for Determination of Employee's Disability (Form AA-1d), the form states, in relevant part, "I agree to immediately notify the RRB: if I work for any employer, railroad or nonrailroad, or perform any self-employment work; [or] if my condition improves; . . . ." DE 1-2 at 10. The form bears the signature, "Richard T Sharpe." *Id.* Plaintiff contends that Sharpe falsely indicated on the application that he had not worked in the year prior (including self-employment) and did not expect to work in the forthcoming year; however, Defendants counter that, due to his head injury, Sharpe does not recall completing the form and that he and Peele were instructed by an RRB agent how to complete the form, including whether to include information about Sharpe's businesses. The court finds genuine issues of material fact exist as to whether the information contained in Sharpe's application was improperly reported.

Plaintiff argues that by 2016, Sharpe's impairment had "sufficiently improved" such that he was able to work on behalf of his businesses, and he reported to the Internal Revenue Service that he "materially participated" in the operation of his businesses that year. DE 26 at 10. Defendants counter that Sharpe testified he did very little work after his injury, and he experienced episodes, even to the date of his deposition, when he could not work at all. The court finds material

23

factual issues exist as to whether, if at all, Sharpe's work during this period demonstrates an improvement in his occupational disability and/or "return" to work.

Plaintiff contends, as conceded by Defendants, that in mid-2017, "Sharpe's doctor had told him that although his condition did not allow him to be a conductor, he could engage in other work, as he had already been doing." DE 26 at 11. Plaintiff asserts that Sharpe himself testified that, during the relevant period, he was "pretty much" the only person performing the following physical work (DE 28-1 at 56: 11-19) for his businesses: planted, trimmed, and fertilized trees; transported trees from other areas of North Carolina to his farm in Yancey County; loaded smaller trees onto the truck or trailer; used a chainsaw, pole trimmer, and other equipment—sometimes climbing a ladder to use the equipment—to trim taller trees; fertilized trees by wearing a backpack and walking around the multi-acre properties to spray the trees; and cleaned the tree lot at the close of the season (*id.* at 58-63). In conjunction with renting his farms, Sharpe maintained buildings and dug ditches, and for his seasonal labor camp, Sharpe engaged in carpentry, painting, roofing, electrical, and some plumbing work, as well as installing and removing air conditioners. Sharpe further testified that, in 2017, 2018, and 2019, his participation in these activities was essentially the "same." *See* DE 28-1, at 141: 1-3, 145: 8-16, 150: 10-12, 156: 4-12. On his tax returns for 2017, 2018, and 2019, Sharpe reported that he "materially participated" in Carolina Wreath and his property rental and farm businesses. *See* DE 29-2, 29-3, and 29-4. Additionally, on Sharpe's 2016 tax return, he reported the company vehicle was driven 22,700 miles (DE 29-1 at 12); Sharpe further testified that in 2017, he drove 22,150 miles (DE 28-1 at 144: 1-6), and in 2018, he drove 26,500 miles (*id.* at 152: 4-18).

While this activity certainly demonstrates Sharpe's ability to engage in some physical work, it does not conclusively show that Sharpe's occupational disability "improved," particularly

24

as Sharpe's physician in 2017 found that he could not return to work as a railroad conductor. The court finds genuine issues of material fact exist as to whether and, if so, when Sharpe's impairment improved or he "returned" to work during the relevant period and, thus, whether he was obligated to report such activities.[11] On the record presented, a jury must determine the material factual issues and, thus, summary judgment is not warranted on Plaintiff's payment by mistake and unjust enrichment claims against Sharpe.

C. Joint and Several Liability

As mentioned above, despite the parties' opposing positions on the matter, Judge Jones did not address the issue of whether Sharpe and Peele are jointly and severally liable for damages on Plaintiff's unjust enrichment and payment by mistake claims, and Plaintiff did not object to this omission. Although not directly on point, the Fourth Circuit has addressed a situation where a plaintiff failed to object to a recommendation in which the magistrate judge did not follow the district court's order; plaintiff argued "the magistrate judge 'did not do what [the district court] ordered him to do,' and, thus, '[t]here [was] nothing' for [plaintiff] 'to object to.'" *See Diamond*, 416 F.3d at 316. The court concluded that plaintiff's lack of objection failed to put the district court on notice that the plaintiff wanted de novo review of that portion of the recommendation. *Id.*

This court recognizes that, in *Diamond*, the magistrate judge made a specific finding regarding a claim and, in this case, the magistrate judge made no finding. However, the court perceives no material difference between the duty to object to a magistrate judge's finding and a duty to object to a magistrate judge's omission. That said, the only action to be taken by the district court in the absence of a timely, specific objection is to review the magistrate judge's

---

[11]As stated above, Plaintiff argues that Sharpe signed the application indicating he understood his obligation to report any changes to the RRB, and Peele testified that she did not receive the annual reminders to report any improvements in Sharpe's condition.

25

recommendation for "clear error." In some cases, such review might be appropriate, such as when a magistrate judge intentionally omits an analysis for a specific reason. However, here, Judge Jones makes no mention of the omission or, even, of the issue itself. Accordingly, the court must conclude that the omission was unintentional.

In such situation, the court finds that the interest of justice requires a de novo review of the issue. Plaintiff argues that the common law permits joint and several liability for multiple defendants engaged in concerted wrongdoing, even when a plaintiff directly made a payment to, or conferred measurable benefit on, only one defendant. Specifically, Plaintiff contends that Sharpe and Peele lived together, and Peele had control and/or signature authority over Carolina Wreath's bank account and Sharpe's personal account. Plaintiff asserts that money from both accounts was used for business and household purposes, demonstrating that Peele enjoyed the "fruits" of the disability payments. Finally, Peele engaged in "concerted wrongdoing," in that she was involved in applying for Sharpe's disability annuity and, by completing the 2019 continuing disability report, concealing his improved condition, work, and earnings from the RRB.

Defendants counter that a genuine issue of material fact exists as to whether the parties engaged in concerted wrongdoing. According to Defendants, no evidence exists demonstrating that Peele directly and specifically benefited from the RRB disability payments; rather it shows only that she lived with Sharpe, was his fiancée, had access to certain bank accounts, and such bank accounts were used for business and household purposes.

The doctrine of joint and several liability may apply only "when there has been a judgment against multiple defendants." *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220-21 (1994). However, the Supreme Court has noted that, for disgorgement actions, such doctrine is "sometimes seemingly at odds with the common-law rule requiring individual liability for wrongful profits."

*Liu v. S.E.C.*, 591 U.S. 71, 90 (2020). Nevertheless, the Court recognized that "[t]he common law did, however, permit liability for partners engaged in concerted wrongdoing," even where a measurable benefit only has been wrongfully conferred upon one of the defendants. *Id.* at 90-91 ("The historic profits remedy thus allows some flexibility to impose collective liability."). Addressing the facts of that action, the Court noted:

> Here, petitioners were married. The Government introduced evidence that Liu formed business entities and solicited investments, which he misappropriated. It also presented evidence that Wang held herself out as the president, and a member of the management team, of an entity to which Liu directed misappropriated funds. Petitioners did not introduce evidence to suggest that one spouse was a mere passive recipient of profits. Nor did they suggest that their finances were not commingled, or that one spouse did not enjoy the fruits of the scheme, or that other circumstances would render a joint-and-several disgorgement order unjust.

*Id.* at 91 (citations omitted). The Court then remanded the case for a determination as to "whether the facts are such that petitioners can, consistent with equitable principles, be found liable for profits as partners in wrongdoing or whether individual liability is required." *Id.*

Plaintiff cites *Liu* in support of its position, and Defendants point out that disputed facts in this case, similar those in to *Liu*, require review by a factfinder. The court agrees with Defendants. The term "concerted wrongdoing" implicates a requirement to determine the parties' intent to engage in unlawful conduct and, here, on the record presented, insufficient facts exist as to whether Peele intended for Sharpe to (allegedly) wrongfully receive the disability benefits and, thus, for the court to find her jointly and severally liable with Sharpe. This matter, along with Plaintiff's claims, will proceed to trial.

## VI.    Conclusion

The court has subject-matter jurisdiction over this action and finds no material factual issues concerning whether Plaintiff's claims are barred by the statute of limitations. However, the record presented demonstrates genuine issues of material fact as to whether the occupational

27

disability annuities Sharpe received January 1, 2016 – May 30, 2018 were paid by mistake because Sharpe failed to report to the RRB any improved impairment, return to work, or increase in work or earnings after he started receiving the payments. Material factual issues also exist concerning whether Sharpe and Peale are jointly and severally liable for Plaintiff's claims. Thus, the court finds summary judgment is not warranted as to Plaintiff's claims for mistake of fact and unjust enrichment and as to Plaintiff's theory of joint and several liability. All of Plaintiff's claims against Sharpe, whether Peele is also liable, and the amount of actual damages owed (if any) on these claims, will proceed to a jury trial.

Accordingly, the M&R is respectfully ACCEPTED IN PART AND REJECTED IN PART, and Plaintiff's Motion for Partial Summary Judgment [DE 25] is GRANTED IN PART AND DENIED IN PART.

The parties are ORDERED to confer and inform this court's civil case manager (Rebecca Chapman 910-679-2068) of the anticipated length of a trial and their proposed three (3) trial dates.

SO ORDERED this 19th day of May, 2026.

Richard E Myers II

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE